v. Rolfe, that's case number 4-2-2-0-3-6-4. Would counsel for the appellant please identify yourself for the record. Good afternoon. This is Darrell Lohman for the appellant with Leslie Rolfe. We are here on People v. Rolfe, that's case number 4-2-2-0-3-6-4.  And counsel for the appellee, will you please state your name for the record. David Robinson for the state of Illinois. Thank you, Mr. Rolfe, and you may proceed with your argument. Good afternoon, your honors, and may it please the court. Again, I am Darrell Lohman, and I represent the appellant for this matter, Leslie Rolfe. My briefs explain in detail why this court must reverse my client's convictions, which violate the First Amendment. Remarkably, the state's brief fails to respond to my First Amendment argument at all, essentially conceding it. Any argument they make today that's not in the state's brief is forfeited and should not be considered. Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and inflict great pain. We cannot react to that pain by punishing the speaker, however. As a nation, we have chosen a different course to protect even hurtful speech on public issues to ensure that we do not stifle public debate. These are the words of the United States Supreme Court in its 2011 decision of Snyder v. Phillips, a case that involved extremely, extraordinarily hurtful language that far outstrips anything seen in the record in this case. The case involved the funeral of Marine Lance Corporal Matthew Snyder, who was killed in Iraq in the line of duty. Seven people picketed his funeral, carrying signs that said things like, Thank God for 9-11. Thank God for IEDs. Thank God for dead soldiers. You're going to hell, and God hates you. The Supreme Court held that this is all protective speech that cannot be punished, since none of the speech in this case comes close to that level. The words that Mr. Rolfe broadcasted in front of Rockford City Hall concerning the destructions of his memorials certainly are protected. The four obliterated memorials included, for example, a message opposing people that support racists and a statement to a deceased child that said, quote, Rest in power, little Mike. Mr. Rolfe's protected speech in a public forum cannot form the basis of a criminal conviction. However, this court can avoid this constitutional question by granting relief on my second argument, which is that the state failed to prove the charged offenses beyond a reasonable doubt. With respect to the obstruction charge, the state failed to prove that Mr. Rolfe materially impeded Officer Williams' investigation, which is its burden, according to the Illinois Supreme Court and Kassler, Kamaj, and Baskerville. Officer Williams admitted that Mr. Rolfe did not prevent him from learning any information that, quote, substantially changed anything. That's on page 396 of the supplemental record in his testimony. When the prosecutor asked Marge Bevers, one of the complaining witnesses, if they needed to move locations so that. I'm sorry, is there a question? I don't see any. Please proceed. Yes. When the prosecutor asked Marge Bevers if they needed to move locations to communicate with Officer Williams, she answered no. That's on page 374. She also testified that Officer Williams asked all three of them, both of the Bevers and Mr. Rolfe, to relocate behind City Hall. Thus, the state's allegation is not supported by evidence. The allegation that Mr. Rolfe obstructed the investigation by following them was not proven beyond a reasonable doubt. And even if the volume of his voice, which was the only thing Officer Williams complained about, somehow delayed the investigation in some de minimis manner, that's not enough to prove obstruction under Kamaj. With respect to the disorderly conduct charge, the state alleges speech that Mr. Mr. Rolfe yelled, which is clear from the video. He's yelling a lot. But as the only Supreme Court held in Swenson as recently as 2020, protected speech alone cannot form the basis of a disorderly conduct charge. The state also alleged a physical act that it failed to prove that Mr. Rolfe shoved a cell phone in the Bevers' faces. To be clear, nobody ever complained that Mr. Rolfe was reporting them in a public place, which also is his constitutional right in a number of cases, including, for example, People v. Clark, a 2014 Illinois Supreme Court case. And he certainly didn't shove anything anywhere near their faces. Kyle Bevers testified that Mr. Rolfe remained between two and eight feet away from him. That's on page 343. Marge Bevers testified that he was always at least four or five feet away from her on 371. Indeed, the entire objective is to broadcast what they were doing, which is something that cannot be accomplished if the cameras held too close to their faces. He stayed at a distance to broadcast them power washing the sidewalk. In conclusion, this court should reverse Mr. Rolfe's convictions for either of the reasons set forth in my briefs, either because they violate the First Amendment as applied to him or second, because the state failed to support the allegations that it made with actual evidence at trial. Thank you. I'll reserve the rest of my time for rebuttal. OK, thank you, Mr. Robinson. Thank you. Your Honor, may it please the court, counsel. The defense makes a lot to do about the state's approach in this case today in the opening, as well as in the reply brief in this case. The state's under no obligation to respond to the defendant's arguments in the manner and the order in which the defendant believes is the most appropriate. The state has addressed the constitutional claims to the extent that it felt appropriate. And in this case, an in-depth analysis of the First Amendment claim is meaningless and needless. This is not a First Amendment case. The defendant was not arrested, charged, nor punished for engaging in any speech. As an aside, one of the things that was just pointed out here was the idea that somehow yelling is equated with speech. No, yelling is the way in which you engage in that speech. It's not speech itself. So that's just one aside. This case is about two issues. One is whether the defendant was proven guilty of obstructing an officer beyond a reasonable doubt and whether he was proven guilty of disorderly conduct against two individuals beyond a reasonable doubt. In the state's brief, page 19 to 21, and then again on page 23, with respect to the allegation and conviction of obstructing an officer, Officer Williams testified as follows. At that point, I felt he was obstructing my investigation. I couldn't communicate with anybody with the yelling and so forth. So I took him into custody and put him in the back seat of my squad car. So the issue here with obstructing an officer had to do with the officer's ability to understand and get control of the situation. That has nothing to do with furthering an investigation, whether there's anything that's revealed as that investigation is furthered. At that point, the crime had been committed. Once the elements were complete, the elements were complete. Most of the arguments that the defendant puts forward are arguments that should be addressed to a jury, a finder of fact. And those arguments were indeed put to the trier of fact in this case and were rejected. As for the disorderly conduct counts, again, the defense makes a lot to do about the distance the cell phone was away from the victims in this case. That, again, is a question for the jury. The jury was presented with the testimony in this case. The jury was presented with the video of the incident in this case and thoroughly deliberated. I think it was a four-plus-hour deliberation. And ultimately, it came back with the conclusion that the elements of disorderly conduct were met. I'll direct the court to page 34 of the state's brief, the elements of the disorderly conduct. As the jury was instructed, that the defendant knowingly performed an act in such an unreasonable manner as to alarm and disturb Marge Beavers and provoke and breach of the peace. And the same allegation was made as to Marge's husband, Mr. Beavers. So the idea here that somehow this was some infringement on defendant's First Amendment rights misses the point entirely. This is a question about reasonable doubt. It's a question of whether this material was put to the jury. It was. The defense is not satisfied with the jury's verdict. But that's how our system works. This was put to the jury. A lot of the noise in the defendant's brief regarding the conduct of the couple that led to this is utterly irrelevant. First of all, whether they would be charged with something or whether they committed some act, there was no allegation of self-defense. And whether they were charged is completely outside the record and is completely irrelevant. And so with that, the state would just point to its brief and ask this court to affirm. Mr. Robinson, I have a question. After the officer got him, the defendant separated from the elderly couple and was able to continue on with his questioning. I think the defendant has argued, well, there could not have been obstruction because it was just a temporary situation where the officer had to stop his investigation, but was then later able to continue it. Does that make any difference in this case? No, it makes no difference. Not just in this case. It doesn't make any difference at all in any case, because, as I stated before, Your Honor, once the elements of the obstruction are complete, they're complete. And so if the officer is able to maneuver around or come up with some way to overcome the obstruction, doesn't eliminate the obstruction. Where the allegation is, as in this case, that the obstruction relates not just to the investigation, but the safety related to that investigation. Investigations, as this court well knows, involve two things primarily. One is the investigation of material facts. So they're collecting facts. They're talking to witnesses. They want to find out what happened. The other aspect of that is you have to secure a scene in order to engage in that investigation. And that's primarily, I believe, what the jury concluded was ultimately the obstruction in this case. But to your point, Judge, it doesn't really matter for our purposes, because that question was put to the trier of fact. This is not a question of as a matter of law, could this happen? The question was put to the jury. In this case, was he obstructed? And the jury came back and said, yes, indeed, he was. I seem to recall cases where, for example, someone may be fleeing on foot from the police and they throw up some kind of contraband. I think the case I'm thinking of was a gun several feet away. And the officers were able to come back and find that gun. And it seems like the cases said that they weren't really obstructed because they were able to fulfill their investigation. In this case, the investigation of whether the defendant had contraband on his person. Is there a parallel there? I guess not, according to your argument. Not as the state sees it. I know exactly the line of cases you're referring to, Judge. In fact, I think in that case, as a 4th District case, I think the gun was thrown over a fence. So the distinction here is that those elements of that, as my reading of those cases go, were not complete. That was not a completed offense. In this case, given the type of obstruction it is, it's completed once he obstructs, once he stops because of the yelling, the engagement. He's stopping that, the second tier of that investigation that I referred to earlier, which is that sort of safety component. Trying to engage in finding out what the facts are. The only way that you can do that as a law enforcement officer is to first make sure that everyone is safe. And once he completed the act of obstructing that aspect of the investigation, then that was it. And that distinguishes it completely from those cases where the defendant is tossing pieces of evidence. Those cases involved, to my recollection, were fleeing suspects, where it was a hot pursuit situation. That's an unfolding event that's separate and distinct from this. And if there are no other questions, we just ask that this court affirm. I don't see any other questions. Mr. Oman, do you have any rebuttal? Yes, I have a few very brief points. I just want to correct the record in the case law on a number of matters. As Mr. Robinson said, his opinion of what he thinks the law is, but I would refer this court to the actual cases that I'm citing in my brief and in my argument. Justice Turner's point is well taken, that there's an entire line of cases, including Supreme Court cases like the Maj and other cases I mentioned in my brief. And in my opening argument, let's say even a minimal intrusion in an officer's investigation is going to be grossly insufficient to prove an obstruction charge, which is really analogous to this case. It essentially operates as an element of the offense. As the only Supreme Court recently, relatively recently in Casler, a 2020 case said, quote, construed together, Gamage and Baskerville firmly established that a defendant's acts must be a material impediment to the investigation. And under the facts of this case, Officer Williams testified that he was not material impeded. He was asked on cross-examination if anything he learned after silencing Mr. Rolfe substantially changed anything about his investigation. And he said no. Marge Bevers testified that she had no problem communicating with the officer. And indeed, even what we know now, having far more information than Officer Williams has, none of this information changes what he knew at the outset, what was the radio chatter that he was responding to, that there was a man yelling at a couple. And again, he knew who the man was. He's out there every day exercising his personal rights. Excuse me for a moment. Mr. Roman, I know you mentioned that as far as materiality, that it did not change as you presented what the officer ultimately learned as far as the information. But is it not the opportunity that he could have, rather he did or could have had obtained information that may have led to a finding that it's material? So it's not just the fact that it's outcome-determinative that it did, but it could have been information that could have influenced him, given an opportunity to pursue that line of questioning. I don't believe there's any support for that in the case law, particularly the line of cases that Justice Turner pointed out. The officer could have recovered the gun or the crack pipe or whatever the physical evidence was earlier, but it is outcome-determinative. They did, in fact, recover the crack pipe at a de minimis period for the gun and a de minimis period afterwards. So just in a practical sense, what actually was obstructed in the answer is nothing in light of the case law. Turning to the disorderly conduct allegations, the state repeatedly says that this is not a First Amendment case. But the disorderly conduct case law itself is replete with references, including people versus Swenson that I mentioned earlier, an Illinois Supreme Court case, that where the disorderly conduct involves speech, it cannot involve protected speech at all. It's very clear that protected speech under the First Amendment cannot form the basis of criminal conviction, and that general concept has found its way specifically into the disorderly conduct case law. So, for example, in Swenson, the court held that protected speech alone cannot form the basis of a disorderly conduct charge. And even this court, in other cases, like people versus Redwood or people versus Bradshaw, have either affirmed the dismissal of disorderly conduct charge or outright reversed the disorderly conduct charge simply because someone was yelling vulgar terminology at a person. That's not going to be sufficient under the case law for disorderly conduct for the state to prove that offense beyond a reasonable doubt. Finally, the state sort of mentioned in passing an issue about officer safety. There is no allegation in here that Mr. Raul was a threat to the officers or to anyone else. Indeed, it's remarkable in the video how much restraint he showed while being assaulted and sprayed, not with a garden hose, but with a high-pressure hose, causing injuries sufficient to require him to be taken to the hospital. Being shoved, knocked down, hitting his head, and being taken to the hospital by the officer to be treated for a concussion. He's not violent. Officer Williams knows he's not violent. He complied with their orders. He followed Officer Williams behind Rockford City Hall, where, indeed, other officers were present, and everyone was safe the whole time except Mr. Wolf. For all of these reasons and for the additional reasons of my brief, this court should vacate his convictions as violative of his First Amendment rights or, alternatively, because the state simply failed to prove the two specific charges that they alleged. Thank you. Thank you, Mr. Oman. Thank you, Mr. Robinson. We appreciate your arguments. The case is submitted.